# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENOIT BROOKENS,<br><br>*Plaintiff*,<br><br>v.<br><br>AMERICAN FEDERATION OF<br>GOVERNMENT EMPLOYEES,<br><br>*Defendant*. | Civil Action No. 17-2206 (RDM) |

## MEMORANDUM OPINION

Defendant American Federation of Government Employees ("AFGE") placed one of its local chapters, Local 12, under trusteeship and cancelled the Local 12 elections of officers that were scheduled to take place two weeks later. Dkt. 1-1 at 9–11. Plaintiff Benoit Brookens, proceeding *pro se*, had planned to run for several positions and, after the elections were cancelled, he filed this action in D.C. Superior Court challenging the imposition of trusteeship. *See* Dkt. 1-1. AFGE removed the case to this Court, Dkt. 1, and has now moved to dismiss for lack of standing and for failure to state a claim, Dkt. 26. Because Brookens lacks Article III standing to maintain this action in federal court, and because 28 U.S.C. § 1447(c) mandates that district courts remand removed actions "[i]f at any time before final judgment it appears that the . . . court lacks subject matter jurisdiction," the Court will **GRANT** in part and **DENY** in part AFGE's motion to dismiss and will **REMAND** the case to D.C. Superior Court.

## I. BACKGROUND

Brookens, a former Department of Labor employee, alleges that he is a member of AFGE Local 12. Dkt. 1-1 at 1 (Compl. ¶ 3). Local 12 was scheduled to conduct elections for several

positions on October 18, 2017. *Id.* (Compl. ¶¶ 1, 3–4). On October 4, 2017, however, AFGE notified the membership of Local 12 that it was placing the Local under trusteeship "to safeguard and protect the Local." *Id.* at 10 (memorandum from AFGE National President to members of Local 12). Following imposition of the trusteeship, AFGE cancelled the October elections, removed the existing officers and ex officio delegates from the offices that they held at that time, and authorized the trustee "to appoint a secretary-treasurer and any other officers he deem[ed] necessary to assist him." *Id.* at 9–10. Those actions have given rise to another lawsuit now pending in this Court brought by the officers who were removed at the time the trustee was appointed. *See Bastani v. Am. Fed. of Gov't Emps.*, No. 18-63 (D.D.C.).

Although Brookens was not an officer of Local 12 at the time the trusteeship was imposed, he had hoped to participate in the upcoming elections. Dkt. 1-1 at 1 (Compl. ¶ 4). Unhappy with the imposition of the trusteeship and the cancellation of those elections, Brookens filed this action in D.C. Superior Court on October 16, 2017 and, simultaneously, moved for a temporary restraining order and a preliminary injunction. Dkt. 1-1 at 1; Dkt. 1-2 at 1; Dkt. 1-3 at 1. Eight days later, AFGE removed the action to this Court pursuant to 28 U.S.C. §§ 1446(b), 1441(a). *See* Dkt. 1.

Brookens alleges that he "was a candidate, in the October 18, 2017 election[s], for the positions of Head Steward, Delegate to the AFGE National Convention, scheduled for August 2018, and Delegate to the AFGE Council," *id.* at 1 (Compl. ¶ 4), but was notified "[o]n October 4, 2017 . . . that the election[s]" had been "cancelled" because Local 12 had been placed in trusteeship, *id.* at 4 (Compl. ¶ 17). According to Brookens's complaint, AFGE's decision to place Local 12 in trusteeship, and the resulting cancellation of the elections, violated the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 401 *et seq.*, in

2

numerous respects. Those alleged violations correspond with the six causes of action set forth in the complaint, each of which alleges a distinct violation of the LMRDA. *See* Dkt. 1-1 at 4–7 (Compl. ¶¶ 20–45) (citing violations of 29 U.S.C. §§ 462, 481, 484).

Several weeks after his case was removed to this Court, Brookens renewed his motions for a temporary restraining order and a preliminary injunction, requesting that the Court dissolve the trusteeship and restore Local 12's authority. Dkt. 13; Dkt. 14. AFGE, in turn, moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Dkt. 8. On January 5, 2018, the Court heard argument on those motions. Dkt. 18. At the hearing, Brookens clarified that his "only claim in this case" is that AFGE "did not follow the proper procedures in placing [AFGE] [L]ocal [12] in trusteeship," and, in particular, that it did not "satisfy" "the factors set forth in Article IX, Section 5(a)(1) through (4)" of AFGE's constitution. *Id.* at 38, 41 (Oral Arg. Tr. 38:14–15, 41:6–9). The Court, ruling from the bench, denied Brookens's motion for a temporary restraining order and held the motion for a preliminary injunction in abeyance to afford Brookens the opportunity to retain counsel. Minute Entry (Jan. 5, 2018). The Court also offered Brookens the opportunity to supplement his motion for a preliminary injunction, regardless of whether he was able to retain an attorney.[1] *See* Dkt. 18 at 30 (Oral Arg. Tr. 30:19–22).

In the course of the argument, the Court also asked Brookens to describe the "personal injury" that he alleges he has sustained—or is sustaining—due to AFGE's actions. *Id.* at 42 (Oral Arg Tr. 42:15–17). Although Brookens's response was not entirely clear, he appeared to argue that imposition of the trusteeship led to the cancellation of the Local 12 elections and thus deprived him of the opportunity to run for office. To avoid any uncertainty on this issue, and to

---

[1] Brookens was ultimately unsuccessful in his effort to obtain counsel.

3

help determine whether it has jurisdiction over Brookens's claims, the Court instructed Brookens to "submit evidence" establishing that he has "standing under Article III of the Constitution." *Id.* at 43 (Oral Arg. Tr. 43:15–24). The Court also denied AFGE's motion to dismiss without prejudice but granted AFGE leave to file a renewed motion to dismiss in combination with its opposition to Brookens's motion for a preliminary injunction. *Id.* at 35–36 (Oral Arg. Tr. 35:17–36:3).

Brookens filed a supplement to his motion for a preliminary injunction on January 17, 2018, Dkt. 19, and AFGE renewed its motion to dismiss approximately a month later, Dkt. 26. Brookens, in turn, filed a combined reply and opposition, Dkt. 28, and AFGE filed a reply, Dkt. 30. The Court, then, heard oral argument on Brookens's motion for a preliminary injunction and AFGE's motion to dismiss on March 16, 2018. Dkt. 33. Ruling from the bench, the Court denied Brookens's motion for a preliminary injunction, finding that Brookens had not carried his burden of establishing a likelihood of success on the merits; that "standing [presents] a substantial hurdle in this case;" and that Brookens had failed to show that a preliminary injunction was necessary to avoid an irreparable injury. *Id.* at 63–64 (Oral Arg. Tr. 63:24–64:11). The Court explained, in particular, that it was likely that a decision setting aside the trusteeship would actually delay, rather than advance, the date on which the Local 12 elections would take place. *Id.* at 64 (Oral Arg. Tr. 64:13–16). In short, because the elections planned under the trusteeship were imminent, while removal of the trustee and reinstatement of the prior officers would require the rescheduling of the elections, granting the requested relief would likely have delayed the elections. For a plaintiff whose only identified injury was the delay in conducting elections, setting aside the trusteeship would have had the unfortunate effect of "snatching defeat from the jaws of victory." *Id.* at 65 (Oral Arg. Tr. 65:1–3).

4

Concluding that it needed additional information to address the question of standing, the Court took AFGE's motion to dismiss under advisement at the conclusion of the hearing. *Id.* at 66 (Oral Arg. Tr. 66:2–5). After the parties submitted supplemental briefs, the Court issued a further order directing AFGE to "update[] the Court on the timeline for the . . . Local 12[] . . . election[s]" and to address Brookens's showing that he was qualified to participate in the upcoming elections. Minute Order (May 18, 2018). AFGE complied with that order on May 23, 2018. Dkt. 40. In doing so, it conceded that Local 12 had determined that Brookens was qualified to participate in the elections, and it provided the Court with a copy of a notice to the Local 12 membership stating that the elections will take place on June 7, 2018. *Id.*; *see also* Dkt. 40-1 (2018 Election Notice).

## II. LEGAL STANDARD

"The party invoking federal jurisdiction bears the burden of establishing" each of the elements of Article III standing, although "the manner and degree of evidence required" varies with "the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct" will often suffice. *Id.*; *see also Owner-Operator Indep. Drivers Ass'n v. Dep't of Transp.*, 879 F.3d 339, 346–47 (D.C. Cir. 2018). But, "[w]here a motion to dismiss a complaint present[s] a dispute over the factual basis of the court's subject matter jurisdiction[,] . . . the court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant." *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (internal quotation marks and citation omitted). Rather, the Court "must go beyond the pleadings and resolve any disputed issues of fact . . . necessary to a ruling []on the motion to dismiss;" in doing so, however, the Court must also ensure that Plaintiffs have been

accorded "ample opportunity to secure and [to] present evidence relevant to the existence of jurisdiction." *Id.* (internal quotation marks and citations omitted). Prior to discovery, the Court must accord Plaintiffs "the benefit of all reasonable inferences," and, in the absence of "evidentiary offering[s]," the Court must avoid "assessing the credibility of [their] allegations." *Id.*

### III. ANALYSIS

Before reaching the merits of a dispute, federal courts must satisfy themselves that they have Article III jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998). To satisfy Article III, the plaintiff must have standing—that is, "'a personal stake in the outcome of the controversy [sufficient] to warrant . . . federal-court jurisdiction.'" *Chamber of Commerce v. EPA*, 642 F.3d 192, 199 (D.C. Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). "[T]he irreducible constitutional minimum of standing contains three elements," *Lujan*, 504 U.S. at 560:

> First, the plaintiff must allege (and must eventually prove) that she has suffered, or faces an imminent threat of suffering, an "injury in fact." Conjectural or hypothetical threats of injury will not suffice. Second, the plaintiff must allege (and must eventually prove) facts sufficient to establish a "causal connection between [that] injury and the conduct complained of." In other words, the injury must "be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party." Third, the injury must be redressable "by a favorable decision." Again, speculation will not suffice; rather, the plaintiff must allege (and must eventually prove) that it is "likely" that judicial intervention will rectify or prevent the asserted wrong.

*Public Citizen, Inc. v. Trump*, 297 F. Supp. 3d 6, at 17 (D.D.C. Feb. 26, 2018) (quoting *Lujan*, 504 U.S. at 560–61 (internal quotation marks, citations, and alterations omitted)).

Because federal courts are "obligated to consider *sua sponte* issues," like standing, that "go[] to [their] subject-matter jurisdiction," *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012), this Court has repeatedly asked Brookens to identify the injury that he contends that he has suffered,

6

or will suffer, if relief is not granted; to explain how that injury is causally connected to AFGE's conduct; and to clarify whether and how a favorable decision would redress his alleged injury. *See*, *e.g.*, Dkt. 18 at 43 (Oral Arg. Tr. 43:14–24) (explaining the requirements of Article III standing). In response, Brookens has offered two theories of standing, neither of which passes constitutional muster.

**A.     Interference With Ability to Seek Office**

Brookens's first—and principal—argument posits that by placing Local 12 under trusteeship, AFGE interfered with his ability to seek election to three offices in October 2017: (1) head steward of Local 12; (2) delegate to the AFGE National Convention; and (3) delegate to the AFGE Council. Dkt. 33 at 34 (Oral Arg. Tr. 34:10–16); *see* Dkt. 1-1 at 1 (Compl. ¶ 4); Dkt. 19 at 3. In his view, the imposition of the trusteeship—and subsequent cancellation of the elections—"eliminate[d] [him] as a candidate for a major position in the union and as a delegate." Dkt. 18 at 11 (Oral Arg. Tr. 11:9–15). It is far from clear that Brookens can show that he has sustained, or is likely to sustain, any injury in fact or that AFGE caused that injury by placing Local 12 in trusteeship. But, even if the Court assumes for present purposes that Brookens could satisfy the injury-in-fact and causation requirements, he unquestionably fails to clear the third and final "irreducible" element standing—redressability.

The redressability requirement limits Article III jurisdiction to those cases in which the relief sought will remedy the injury alleged. *See Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000); *Steel Co.*, 523 U.S. at 107. Although certainty is not required, "the [plaintiff] must demonstrate 'that it is likely as opposed to merely speculative that the injury will be redressed by a favorable decision of the court.'" *Spectrum Five LLC v. FCC*, 758 F.3d 254, 260 (D.C. Cir. 2014) (citation omitted). In this manner, the requirement "limit[s] the federal

judicial power 'to those disputes . . . which are traditionally thought to be capable of resolution through the judicial process.'" *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.,* 454 U.S. 464, 472 (1982) (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).  Sensibly, it means that, if a favorable judicial decision is unlikely to correct the alleged wrong, there is no case or controversy within the meaning of Article III.

      This is such a case.  According to Brookens, the principal injury that he has sustained—and is sustaining—is the inability to run for election to various union posts.  When asked at oral argument whether the entire injury he is "asserting comes back to the question of whether [he was] allowed [to run for office in October 2017] and since then," Brookens responded, "Right."  Dkt. 33 at 37 (Oral Arg. Tr. 37:6–10); *see also id*. at 29–30 (Oral Arg. Tr. 29:17–30:5); *id.* at 41 (Oral Arg. Tr. 41:5–18).  The Court repeatedly pressed Brookens on this issue and, with the one exception of the injury discussed below, that is all that he identified.  Significantly, despite multiple opportunities to do so, Brookens did not identify any monetary or other compensable loss.  That omission, moreover, is not surprising.  As the Local 12 bylaws make clear, even if the October 2017 elections had proceeded as scheduled, and even if Brookens had been elected to office, he would not have received any compensation.  *See* Dkt. 35-2 at 5 ("The [L]ocal shall have no paid officers.").  Thus, at least for purposes of Brookens's first theory of standing, the sole injury that he asserts is the lost opportunity to run for office in October 2017 and during the intervening months.

      The relief that he seeks—dissolution of the trusteeship and reinstatement of the previously elected officers—however, would do nothing to redress that injury.  Brookens did not hold office at the time the trusteeship was imposed, so reinstating the previously elected officers would not directly benefit him.  The undisputed evidence also shows neither dissolution of the

trusteeship nor reinstatement of the previously elected officers would remedy the cancellation of the October 2017 elections or accelerate the timing of rescheduled elections. By Brookens's own account, if the Court were to dissolve the trusteeship and reinstate the previously elected officers, it would take several months to "send out the nominations notice," to "advertise" the elections, to permit an opportunity for "campaigning," to appoint "an election[s] committee," and to conduct the elections. Dkt. 18 at 15. In contrast, according to Nathaniel Nelson, the trustee who was appointed to oversee Local 12, those currently charged with managing Local 12 intend "to hold elections for local officers" and "elections for delegates to participate in AFGE's 2018 National Convention" in the very near future. Dkt. 25-2 at 2 (Nelson Decl. ¶¶ 5–10). In January 2018, Nelson predicted that those elections would take place "in or about May 2018," *id.* at 2 (Nelson Decl. ¶¶ 7, 9), and, although the schedule has slipped by about a week, the elections are now scheduled to occur on June 7, 2018, Dkt. 40-1 at 1. That date, moreover, is apparently firm; Local 12 has provided formal notice to its members that voting will occur between 10:00 a.m. and 2:00 p.m. on June 7, 2018 at four locations and by absentee ballots. *Id.* Of equal importance, Brookens will appear on the ballot for each of the three positions he seeks: head steward, delegate to the AFGE National Convention, and delegate to the AFGE Council. Dkt. 36 at 11–12. Accordingly, absent intervention by the Court, Brookens will soon receive all the relief that he seeks in this case. Moreover, by dissolving the trusteeship and removing the current officers, as Brookens requests, the Court would only cast doubt on the upcoming elections and risk postponing the very elections that Brookens seeks to compel.

Although Brookens would have preferred that the elections occur in October, he does not seek any backward-looking relief, and a "past harm" cannot, standing alone, justify "forward-looking relief." *Morgan Drexen, Inc. v. CFPB*, 785 F.3d 684, 689 (D.C. Cir. 2015); *see also*

9

*City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (internal quotation marks and citation omitted)). The relevant question, therefore, is not whether Brookens suffered some past wrong, but whether his alleged injury—his inability to stand for election—"is likely to be redressed by a favorable decision on the merits." *Williams v. Lew*, 819 F.3d 466, 472 (D.C. Cir. 2016) (quoting *Humane Soc'y v. Vilsack*, 797 F.3d 4, 8 (D.C. Cir. 2015)). The answer to that question is plain: a favorable decision would not only fail to remedy Brookens's alleged injury, it would worsen it.

This, then, raises one final set of issues: is the relevant question one of standing or mootness, and, if it is mootness, does that make a difference? Although standing and mootness are closely related concepts, the doctrines—and relevant considerations—are distinct. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189–90 (2000). Both doctrines ask whether a case or controversy exists. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Standing poses this question at the time the litigation is commenced, while mootness considers whether the requisite controversy continues to exist throughout the litigation. *Id.* at 67 n.22 (citation omitted). The doctrines differ, however, in important respects; most significantly, the courts recognize exceptions to the mootness doctrine that do not extend to standing, most notably the "capable of repetition, yet evading review" and voluntary cessation exceptions. *See Friends of the Earth, Inc.*, 528 U.S. at 190–91, 193.

In this case, it is difficult to know whether Brookens's claim was redressable at the moment he brought suit. He did not bring suit until October 16, 2017, after the elections were cancelled and just two days before the date on which those elections were to have occurred. Dkt. 1-1. It is possible that, had the Superior Court or this Court immediately dissolved the

trusteeship and reinstated the previous officers, those officers might have been able to hold the elections as planned or to reschedule the elections for a date prior to June 7, 2018. But, even if that had occurred, the Court cannot discern any cognizable injury that Brookens would have suffered by virtue of whatever brief gap might have existed between that hypothetical election date and June 7, 2018. For present purposes, however, the Court is prepared to assume, without deciding, that Brookens's claims were redressable on the day he filed suit.

That, however, does not change the Court's conclusion that it lacks Article III jurisdiction because Brookens's claims are, in any event, moot, and none of the exceptions to the mootness doctrine is applicable in this case. A claim becomes moot if, among other things, it is no longer "likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). In other words, the Article III "'case-or-controversy requirement subsists throughout all states of federal judicial proceedings.'" *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78 (1975)). For the reasons discussed above, Brookens's claims fail this test; the union has already scheduled the elections, which will take place in just a few days.

Thus, the only question is whether any of the exceptions to the mootness doctrine are applicable. They are not. There is no reason to believe that the present controversy is capable of repetition, yet evades review because there is no reason to believe that Local 12 will be placed in trusteeship again, much less that such an action would likely occur on the eve of an election. Nor does the voluntary cessation doctrine apply in this context. Under that doctrine, "a defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc.*, 528 U.S. at 190; *see also Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). The purpose of this rule is to prevent defendants from "engag[ing]

11

in unlawful conduct, stop[ping] when sued to have the case declared moot, then pick[ing] up where [they] left off, [only to] repeat[] this cycle until [they] achieve[] all [their] unlawful ends." *Already, LLC*, 568 U.S. at 91. That concern, however, has no bearing on the present case. AFGE has not mooted—or attempted to moot—the "case simply by ending its [allegedly] unlawful conduct once sued," *id.*, indeed, it has not stopped the allegedly unlawful trusteeship, which other plaintiffs continue to challenge in another case pending in this Court, *see Bastani v. Am. Fed. of Gov't Emps.*, No. 18-63 (D.D.C.). Rather, all that has changed is that the union has now rescheduled the elections that were interrupted as a collateral consequence of the imposition of the trusteeship. In short, this is not a case that poses the question whether the "allegedly wrongful behavior [can] be expected to recur," *Friends of the Earth, Inc.*, 528 U.S. at 190. That conduct is ongoing, and all that has changed is the effect of that conduct on one of the many affected parties.

The Court, accordingly, concludes that neither of the "two [principal] exceptions to mootness," *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 647–48 (D.C. Cir. 2011), applies here and that Brookens's election-interference theory is insufficient to establish an ongoing case or controversy.

**B.      Brookens's Representation in Other Litigation**

When pressed at oral argument, Brookens identified one additional injury that he allegedly suffered due to the imposition of the trusteeship. Although not mentioned in his complaint, Brookens asserted at oral argument that, as a result of the imposition of the trusteeship, a union lawyer designated to represent him in another case before this Court experienced a delay in obtaining files relating to that case, which were maintained at the offices of Local 12. *See* Dkt. 33 at 43 (Oral Arg. Tr. 43:20–22). At oral argument, the Court heard from

both Brookens and the union lawyer, Eleanor Jenkins, about the issue. Although both were undoubtedly aggravated by the difficulty of obtaining access to files stored at Local 12's office, neither identified any harm that Brookens had suffered. Accordingly, even if this alternative theory of standing were properly before the Court, it would fail to satisfy the injury-in-fact requirement.

The episode at issue arose in the context of a case Brookens brought years ago against the Department of Labor, alleging that he was fired due to his race and age and in retaliation for his union activity. *See Brookens v. Acosta*, 297 F. Supp. 3d 40 (D.D.C. 2018). Brookens brought an administrative challenge before the Merit Systems Protection Board ("MSPB"), which concluded that he had failed to substantiate his claims. *Id.* at 43. At the time the MSPB rejected Brookens's claims, it informed him that he could seek review of his discrimination claims before the Equal Employment Opportunity Commission or could seek review in federal district court within 30 days of his "receipt of [the MSPB's] order." *Id*. Brookens, however, did not take either approach and, instead, appealed the MSPB's decision to the Federal Circuit. *Id.* Ultimately, the Federal Circuit concluded that it lacked jurisdiction and transferred the case to this Court. *Id.* at 44. The Department of Labor, then, moved to dismiss on the ground that Brookens failed to timely file. *Id.* That motion was fully briefed before AFGE placed Local 12 in trusteeship, *see Brookens v. Acosta*, No. 16-1390, Dkt. 16; Dkt. 18; Dkt. 20, and thus Brookens cannot claim that the trusteeship had any effect on the briefing of the motion.

All that happened after the Local was placed in trusteeship is that the Court asked the parties to address one question: when did Brookens "receive notice" of the MSPB's decision for purposes of 5 U.S.C. § 7703(b)(2), the provision that requires an aggrieved party to file suit "within 30 days after the date the individual filing the case received notice of the judicially

13

reviewable action." *Brookens v. Acosta*, No. 16-1390, Minute Order (Feb. 1, 2018). In response to that narrow question, Brookens's counsel asserted that she "does not contest (and has never contested) that at the time [the] MSPB rendered its decision, she was an MSPB e-filer" and thus received "the decision on the date it was rendered." *Brookens v. Acosta*, No. 16-1390, Dkt. 23 at 1–2. Although Brookens's supplemental brief makes additional arguments, none is responsive to the Court's order. The Court's decision in *Brookens v. Acosta* turned on only one fact—the fact that Brookens did not file suit within 30 days of receiving notice of the MSPB's decision—and that fact was undisputed. 297 F. Supp. 3d at 44. Against this background, it is therefore unsurprising that, at oral argument, neither Jenkins nor Brookens could identify any connection between Jenkins's lack of access to the documents held by the union and the Court's decision dismissing Brookens's discrimination and retaliation suit. *See* Dkt. 33 at 49–50 (Oral Arg. Tr. 49:23–50:16).

"The party invoking federal jurisdiction bears the burden of establishing" each of the elements of standing, including injury in fact, and that burden varies with the stage of the proceeding. *Lujan*, 504 U.S. at 561. At the pleading stage, as here, the plaintiff need only allege facts sufficient to establish standing, *id.*, and, because Brookens is proceeding *pro se*, the Court will also consider facts he has identified in other pleadings and at oral argument, *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007). But, even applying that liberal approach, the Court cannot discern *any* factual allegation or assertion that would satisfy the injury-in-fact requirement. At best, Brookens's claim of injury is unduly speculative, *see Attias v. Carefirst, Inc.*, 865 F.3d 620, 626 (D.C. Cir. 2017) ("An injury in fact must be concrete, particularized, and most importantly for our purposes, 'actual or imminent' rather than speculative."), and, more pointedly, it is wholly unfounded.

14

The Court, accordingly, concludes that Brookens's second theory of standing fails because he has not identified any actual or imminent injury in fact that he has suffered or will suffer due to a lack of access to the litigation documents maintained by Local 12.

**C.     Next Steps**

Having concluded that Brookens has failed to carry his burden of showing that the Court has Article III jurisdiction to consider his claims, the Court must decide whether to dismiss the action or to remand it to the Superior Court.  The governing statute—28 U.S.C. § 1447(c)—provides a clear answer to this question: "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded." *Id.* (emphasis added).  Despite this unqualified language, at least one court of appeals has suggested that a district court may dismiss a case when a remand would be futile.  *See Boaz Legacy, L.P. v. Roberts*, 628 Fed. App'x 318 (5th Cir. 2016) (mem.) ("[D]ismissal, rather than remand, may be proper if . . . the state court in which it was brought also would lack jurisdiction.").  Most other courts of appeals, however, have concluded that the clear language of the statute is dispositive. *See, e.g.*, *Albingia Versicherungs A.G. v. Schenker Int'l Inc.*, 344 F.3d 931, 938 (9th Cir. 2003), *amended*, 350 F.3d 916; *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225–26 (10th Cir. 2012) (collecting cases from the Third, Fourth, Sixth, Seventh, Tenth, and Eleventh Circuits).  Moreover, although the D.C. Circuit has not addressed whether § 1447(c) is subject to a futility exception, it has broadly observed that a district court without subject matter jurisdiction "must remand the case" under § 1447(c); *see Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 10–11 (D.D.C. 2007).  The Supreme Court, too, has stressed the mandatory nature of § 1447(c), even though it ultimately did not decide whether the statute admits of a futility

exception. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991).

Although a futility exception comports with principles of judicial economy and common sense, it does not comport with the plain language of the statute, which, as the Supreme Court has observed, commands: "where subject matter jurisdiction is lacking, the removed case *shall* be remanded." *Id.* (internal quotation marks omitted). This is such a case. The Court will therefore order that this action be remanded to the Superior Court, which may then address whether it has jurisdiction over Brookens's claims under the LMRDA.

## CONCLUSION

For the reasons stated above, the Court will **GRANT** in part and **DENY** in part AFGE's motion to dismiss for lack of subject matter jurisdiction, Dkt. 26, and will **REMAND** this case to D.C. Superior Court.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: June 5, 2018